May it please the Court, I'm Victor Halton. Good afternoon, Your Honors. Are we splitting it? Yes, we are. And my co-counsel here is John Ballas. He represents Mr. Smith. I represent Herbert Bates. What we'd like to do is address a couple issues. What I want to address principally is the multiplicity issue, and then Mr. Ballas is going to address principally the kind of issue that we have. You're not splitting it by minutes, though? I would like to have it go about six minutes, then have Mr. Ballas go about six minutes, and then reserve the balance of our time for rebuttal. Would the Clerk run them at six and six, please? Counsel? All right. First of all, obviously there's a very significant Booker and Blakely issue in this case. We're all aware that Ameline is still pending. So I wasn't planning on addressing the Booker and Blakely and Ameline issue unless the Court has any questions. I'd be happy to take those. I was going to focus my energy here today on the multiplicity issue. Let me ask you something about that. I'm pretty sympathetic with your argument that consecutive sentences for the three conspiracies, whether you approach it in any of several ways, is problematic. But in view of the complexity of this case, I have trouble saying that any error is plain, frankly. I'm trying to put myself in the shoes of the trial judge, and without the lawyers to hold my hand, this would be a hard swamp to wade through. Well, I don't know that I have to, with respect to the multiplicity, demonstrate that this was plain error. Why not? I believe that the standard is simply, is this an illegal sentence? And this Court conducts a de novo review. I think that the government's argument was that, well, look, the defense has waived this. They did not raise a multiplicity attack below. But the cases that I've cited demonstrate that our attack is not on the nature of the indictment being multiplicitous. However, it is that we have a double jeopardy problem here, a multiplicity problem here, because the way the sentences were structured. This is an argument that can be raised for the first time on appeal. It's an argument that cannot be waived, and it's an argument that is assessed by this Court under a de novo standard. It's only Smith who raises the jury instruction multiplicity. Is that correct? And you're representing? I'm representing Herbert Bates. Okay. And Bates is raising this as a sentencing issue, not as a jury instruction issue. Well, Mr. Bates argued in his opening brief that I prepared that the trial court erroneously denied a request for multiple conspiracy instructions. Okay. So I'm incorrect in my memory, is that what you're saying? I believe Mr. Ballas can correct me if I'm wrong, but I believe that Mr. Smith joined that issue. Okay. Okay. So both issues are wrong. Both of you are arguing about the instructions as well as the sentence. Yes, Your Honor. But on the instruction issue, we review for plain error because this was not preserved. Is that right or wrong? Well, actually, it was raised below that what we're – our argument there is that the defense at the jury instruction conference requested of the district court judge, we want a multiple conspiracy instruction. The district court judge denied that request. So that's not – that's just a standard – the typical standard of review for erroneous denial of a request for a jury instruction. Now, as to the – my principal point, that we've got three conspiracy charges here in this – I don't know what it was – 118-count case. Wait. How does asking for the multiple conspiracy instruction raise your multiplicity argument? It does not. It seems like it's the flip side. Well, there are two – I guess my thinking on this is the principal argument is that the sentences imposed, the multiple consecutive sentences for the conspiracies give rise to a double jeopardy violation. They're multiplicitous. The government says, no, these were multiple conspiracies. You can go ahead. You said to the trial judge, we want a multiple conspiracies instruction so that the jury can decide we're guilty of some but not other conspiracies. But implicit in that is they can decide that there are multiple conspiracies. My position is that the government was trying to have it both ways. Sounds like you're trying to have it both ways, too. Well, I'm not – I was not trial counsel. I did not – let me back up. The – going to my core argument, if I could just address the multiplicity in terms of sentencing, what you have is a tax conspiracy, a mail fraud slash wire fraud conspiracy, and a money laundering conspiracy. Throughout the course of pretrial litigation, during the trial, and in closing argument, the government expressly urged this is all one ball of wax. In fact, if the defense – here's my problem. All through trial, the government is saying it's one ball of wax. It's just one conspiracy to do a lot of bad things. The defense is saying, oh, it's much more complicated than that. It's multiple conspiracies. This one may be involved in that conspiracy, and this person may be involved in that one, and they don't overlap, and it may affect admissibility of evidence for this conspiracy or that and lead to admonitions. All through, you're saying multiple conspiracies. And then comes time for sentencing. And the pre-sentence report comes in, and every – and the sentence is being considered in terms of multiple conspiracies, just as in the trial the defense wanted. And now the defense should be saying, look, Your Honor, it's established. It's just one conspiracy to do a lot of bad things. But they don't say that. They lie in the weeds. So my question is, can they come forward now and say, oh, it was all wrong from the get-go, it should have been multiple conspiracies? Well, counsel for Mr. Bates, trial counsel for Mr. Bates did object to the district court's imposition of consecutive sentences on these multiple conspiracy counts. He did not utter the magic words, do double jeopardy or multiplicity. That would have been a big help if he used the magic words. I don't deny it. But nevertheless, the core point here is that we have to look at – this Court has to look at it independently. I mean, somebody says, I don't like the sentence. The trial judge is inclined to say, what's the matter with it? And it's a big help if someone can tell him. I agree, Your Honor. I agree with that. I see that my time's up, and I'll reserve the balance. Okay. Thank you, counsel. Good afternoon, Your Honor. My name is John Ballas. I represent David Larry Smith, Mr. Bates' co-defendant. I want to concentrate on the jury-juror bias issue, and then if the Court has any other questions on any of the other issues raised in my brief. I didn't understand the juror bias issue. I mean, so one juror takes a shine to a government witness. He thinks she seems like a really nice person. And long after the trial, totally properly, nothing's before him anymore. One day after the trial. He tries to make contact with her. But it's all over. The trial's all over. That's what makes this even worse. There was no possibility to explore the bias during – if it would have came out. Explore what? I mean, how could there be a trial where some witness doesn't find some – or some juror doesn't find some witness nice or attractive? Well, there's a difference between a juror saying, I think one of the attorneys or witness is attractive, and giving a letter to the agent – and this is the main government case agent who was present during much of the trial, who presented the summary testimony, who interviewed most of the government's other witnesses, a day after the verdict, and said that you have this – your case agent has a special kind of aura that I felt deprived of the ability to talk to her during the trial. And that the other – the other jurors noticed the interaction sufficiently that they teased me about it for days afterwards. And if I was a defendant on trial, or I think if anyone was a defendant on trial, you would not feel comfortable with a juror like that judging your case on serious charges where your – you know, your life's at stake. And I think it was very – Can I have an ugly rule? People can only put on ugly witnesses? No, that's not the case. But the case is – the question is whether there was some interaction between a juror and a government witness or government agent that was potentially prejudicial. But we know what the interaction was. It was not a communication of information. It was, at most, an elevator smile. We know what the interaction was that was in the letter that he wrote the case agent. That was not an interaction during the trial? Well, it was a – during the trial in that it occurred while the – not in the courtroom, but while the trial was taking place outside in the elevator. What's our scope of review? The trial judge took this really quite seriously and made a ruling that there wasn't anything that happened during the trial that tainted the deliberation. Do we review that for abuse of discretion? And if so, how do we apply that standard? Well, the district court did not hold an evidentiary hearing. And I think if the court did hold an evidentiary hearing, made findings of fact, then you review it for abuse of discretion and you would uphold it. No, well, findings of fact we review for clear error. Right. Which is why I asked you about abuse of discretion. But the question I think at this point is it's an issue of law on whether or not you're entitled to an evidentiary hearing. You three judges here are in just as good a position to be able to evaluate that letter and determine whether or not it's potentially prejudicial or it may have influenced the verdict so that you're entitled to an evidentiary hearing. I think it would be a completely different situation if the judge did hold an evidentiary hearing, heard all the evidence, and then made specific findings. How did the letter come to light? I believe that the case agent gave it to the prosecutor. Prosecutor then gave it to the court and defense counsel. And how soon was that? You said the letter came one day after the trial? Yeah, the jury's verdict was on March 20th. The letter is postmarked March 21st. And it came up relatively quickly. No suggestion that it was hidden or anything like that? No. No. The agent recognized there was a problem with it and brought it to the attention of the prosecutor who brought it to the attention of court and counsel? Yes. Yes. Is your argument that in a situation like this that enough prejudice should be presumed to require an evidentiary hearing? That that letter itself is sufficient to get an evidentiary hearing, yes. Without any proof or inference that something improper had occurred during the trial? Yes. I think the court's cases talk about innocuous contacts between jurors and outside parties. But there was no contact. Well, the contact in the eye contact... Right. The letter describes, with other people around, apparently, that the juror and the witness smiled. That's what it reveals. And then it reveals the person's feelings about that and how they sort of took that to heart. But the only fact that we know is that they smiled at each other in a crowded place. How do we... What do we do with that? Well, I mean, I agree that the contact itself does not seem that significant. But I think the important thing is the effect it had on the juror and that the juror made it seem like it was a very important thing to him. And the court's cases talk about being potentially prejudicial and that distracting the juror or possibly influencing the verdict. That juror's comments about being deprived to talk to him about being teased about it for days afterwards, I think... He says they weren't allowed to converse. He understood that. She understood that. They didn't converse. It seems like what you'd want to have a hearing about is any conversation they had to see if it touched on the matters at trial. And the letter establishes itself that there's nothing to find out because they didn't converse. I think one thing you'd want to know about is whether the juror took other steps to potentially find out the witness's phone number and address during the trial. How concerned, how distracted he was during the trial about the contact. Let me give you a hypothetical. Really, I noticed when I was a district judge that a lot of the FBI agents who gave testimony when it wasn't just who happened to be there but there was some option about who would testify were unusually handsome men. It looked like the FBI was just picking out its movie star looks kind of agents and training them to testify a lot. Let's say one of those if you were to have a hearing you would find out she fell head over heels in love with him when he testified on the witness stand. She could think of nothing else through the rest of the trial except how much she adored this guy. And there was no way in the world that she was going to deliver a verdict contrary to the position urged by this FBI agent. It seems to me that under the rule that prohibits a juror from impeaching his own verdict that evidence could not come in it could not be heard and it could not be used to impeach the verdict. I don't agree. I believe that under rule 606B the juror would be prohibited from saying that my infatuation with that FBI agent caused me to return a guilty verdict. It would not be prohibited under cases like Rutherford and the other court's decisions of saying that because of my infatuation with that FBI agent I didn't even listen to any of the rest of the evidence and it was irrelevant to me what else came in and I was distracted. That is just fundamentally unfair to be tried by a juror that has that type of a mindset. In the absence of prima facie evidence that the person was unable to deliberate or unable to evaluate the evidence which is what you're suggesting the fact that they have a state of mind that is either infatuated with or detests a witness seems like it's a feature of a lot of trials and I'm not sure what you do with that. There's enough here that the defendants were entitled to an evidentiary hearing. But what is the enough? You know that there was a smile in a crowded place and you know that this person kept thinking about it and really liked her but there's no indication of anything else of not doing his job as a juror. You're right there's no indication that he was teased about it for days from the other jurors he said that she had a special kind of aura but we don't have that additional step but I think that's what the evidentiary hearing is for is to be able to explore that to get that out that's typically what is done in an evidentiary hearing. Thank you Counsel. Thank you. May it please the Court my name is Samantha Spangler Assistant United States Attorney I was not trial counsel but I've endeavored to study the case extensively. The multiplicity, could you help me on that? Yes I can. It looks like nobody flashed a warning to the judge about it but it's still kind of troublesome that they get sentenced for three crimes one after the other when it was all one conspiracy. Well at the sentencing the count 25 which was the wire and mail fraud conspiracy and count 64 which is the money laundering conspiracy, those were both grouped for sentencing purposes and it was then there was a multiple count adjustment because of the count 1 conspiracy, the Klein conspiracy which was not treated as part of the same group. Why weren't they all grouped? Because of the guidelines telling the court that when there's different conduct, different harm, different conspiracies involved that the court is supposed to treat them as separate I had real trouble with the differences. It looked to me as though this was one scheme sell phony tax shelters to people, keep them quiet by basically involving victims in illegal conduct themselves and then steal the money from them that they invest in the phony tax shelter scheme and it looked like everything was directed toward this one coherent fraud. Well your honor there is some difference in timing They charged them a fee to steal their money as I recall I'm sorry what was that? They charged the victims a fee to steal their money Yes, yes indeed they did And it looks like it's all just one I don't see why they wouldn't all be grouped Well the court has advised what test we're supposed to look at in determining whether it's the same conduct or not and that's laid out in our brief I'm having trouble putting my hands on my exact notes Yeah there's a multi-part test what page it is but the test Arnold I think you're talking about You're talking Arnold right? That's exactly right Time frame, geographic location participants, overhead acts and goals and it looked like there was a lot of overlap There was overlap however overlap is allowed there were differences in time frame there were differences in that in the conspirators in that Wadsworth was not charged in the mail and wire fraud conspiracy and in the money laundering conspiracy although she was charged in the Klein conspiracy, the tax fraud conspiracy there were differences in time frames involved but whether one person other than these defendants was or was not charged does not establish whether they can be sentenced without grouping that's a matter totally within the prosecutorial discretion of the U.S. Attorney's Office No I'm sorry I didn't mean to say that she wasn't charged She wasn't charged she wasn't convicted of the count one conspiracy she was charged with the count one conspiracy and that's what I meant to say as to the other two charges she was not charged and that's a decision based on the nature of the evidence the volume of the evidence to show her involvement in the other aspects of this conduct and there was also this character Lonnie Schmidt that's referenced in our brief he was he went with Smith and Bates down to the Cayman Islands to set up these accounts initially and he was involved in these UBO's I don't understand where this argument about other people matters I'm thinking suppose my friend and I decide to steal a lot of money from a lot of people and we involve some other people in various phases of it one of them does the mailing for us but that person is not involved in some other aspects one person does some other things for us but isn't involved in the mailing so they may not be guilty of all the different overt acts or conspiracies depending on how they're charged but we are yes your honor and the reason that the government went into it is because it is one of the Arnold factors let's say you were to lose on that is it clear that if you lose on that you lose because the double jeopardy issue cannot be waived no your honor because we also have the fifth Arnold factor which legally distinguishes the conspiracies and you've got differences in the way the crimes were committed and charged and each charge is alleged to violate section 371 but 371 has two parts there's the conspiracy to defraud the United States and then there's the conspiracy to commit an offense against the United States and the wire and mail fraud and money laundering are certainly offenses against the United States and that's why they are appropriately grouped for sentencing purposes but the Klein conspiracy is a conspiracy to defraud the United States and that's why it's treated differently you also have differences in the overt acts that are alleged in the varying conspiracies there's some overlap but not complete overlap different conduct was involved and this court has recognized that prosecutors have to make fine distinctions on these kinds of charges and what we're guided by is the Arnold factors and it is difficult I mean if we had charged for example one overarching conspiracy that included counts 1, 25 and 64 then the defendants would have argued that our indictment was multiplicitous that we were charging too many conspiracies in one count if we break them up then now on appeal for the first time they're arguing that it's multiplicitous because we split them up into separate counts and I think that this is important the fact that they did not argue below that count 1 was multiplicitous to count 25 was multiplicitous to count 64 instead the arguments that they presented in the district court at their motion to dismiss and at the jury instruction conference were that count 1 charged multiple conspiracies within it involving different taxpayers and similarly count 25 was multiplicitous in that it involved separate victims of the wire and bail fraud and then similarly count 64 the money laundering conspiracy charge they argued it was multiplicitous because again there were multiple victims and they didn't make this argument that they're making here today before the district court and so that's why the government is arguing that a plain error analysis should be invoked because of the forfeiture of that argument by failing to preserve it below do you have a good authority we can rely on for your argument on the plain error yes your honor the decision of this court in Hernandez Guardado which is cited in our brief the citation is 228 F 3rd 1017 and that case discusses at some length the supreme court's distinction between waiver and forfeiture and counsel is correct in the reply brief in distinguishing waiver and forfeiture and waiver applies in situations such as when the defendant enters a guilty plea and has thereby given up arguments that he could have otherwise raised if he had gone to trial here of course they went to trial but these arguments were not raised at trial they were not raised on a motion to dismiss and the government submits that they were also not raised at sentencing the reply brief attempts to make an effort to show how the how one defendant raised the argument that's now being raised on appeal at sentencing but as your honors recognize the word multiplicity was not used and they did object to the grouping of the counts and argued that there should only be one total group of counts for the sentence that was to be imposed on all of everything in the indictment essentially and if that adequately raised the issue then the government's position is they still haven't met the standard of showing that that that was a double jeopardy that they've got consecutive sentences and that's when we rely back again on the Arnold factors only it's under a different standard how would the sentences have come out differently if all three conspiracies were grouped I don't think they would have your honor because as we mentioned in our brief the guidelines require the court to impose even if it were charged all as one conspiracy the guidelines require the court to separate them out if there's different conduct involved so applying the Arnold factors again would have meant that the Klein conspiracy would have been treated as a separate count than the counts that were the money laundering and the wire and mail fraud conspiracies and so there would have still been a multiple count adjustment applying the guidelines and that's a good segue into the Booker issue the posture of this case is such that Booker had not been decided yet at the time that the government filed this brief when the defendants filed their joint reply brief they had the benefit of Booker in addition to that they raised an ex post facto argument for the first time that the government has not responded to on this appeal and the government did have the opportunity to respond to the identical argument before the district court in co-defendant Christopher Bates case which was remanded in light of Blakely and so that I could very easily submit to the court a brief on that issue it would be two or three pages in a letter form if you would be inclined to see that at any rate the Supreme Court has said that the ex post facto clause does not apply to judicial decision making it said that in the Rogers v. Tennessee case it did say that due process considerations are not co-extensive with the ex post facto clause and so here the government's position is that the due process argument to the extent that it has adequately been raised here regarding non-notice does not help the defendants because at no time did they have a right to be sentenced to up to the maximum of the guideline range Booker of course threw out the guidelines as a mandatory set of rules and now their only advisory which leaves the court the discretion to sentence all the way up to the statutory maximum and on the pure Booker issue setting aside the ex post facto or due process issue the government's position is that there was an error which was that the sentencing court believed that the guidelines were mandatory and that error is also plain however it is the defendants burden to show prejudice to a substantial right that they haven't done that and cannot do that here because the court did consider the guidelines and the court had a pre-sentence report that recommended that both Herbert Bates and Larry Smith be sentenced to the middle of the guideline range of 136 months. You know it may make a lot more sense, I noticed that your opponents did not argue this issue in their opening argument and to one extent or another were all Booker remedy and a lot of that's going to be answered we hope by Ameline and it may make sense to and I'll raise this with my colleagues but it may make sense to ask for a supplemental brief once Ameline comes down as it impacts this case. And that would be fine and if Your Honor would rather not hear from me further on that. Well I'd like to ask you about the jury issue that was discussed in the opening argument What is the proper response of a district court when the activity described is proper but the mindset of a juror is at least for the purpose of this question or argument biased towards a witness for one side or against it would be the same question. I think you took an instant dislike to some witness. What is the proper response of the district court who there's no improper activity. It's glancing across the room or it's watching the way somebody walks or drives their car or whatever it happens to be but the juror reveals that they have a certain very strong mindset that results from that. What is the court supposed to do? Well I think the court here could look to begin with at what happened in this trial. And here the jury was instructed as page 31 footnote 11 of the government's brief indicates that the jury was instructed to decide this case based on the evidence not based upon their personal likes or dislikes etc. They're always told that. Yes. And this court has repeatedly ruled that jurors are expected to follow such instructions and that they're presumed to have followed them or so the next step would be to consider well how did this juror vote? And when you consider the numerous acquittals of charges that took place in this case and the acquittal of the co-defendant Charlotte Wadsworth, the indication is that this juror did exactly what he was supposed to do which was evaluate the evidence based on the evidence and he voted with his fellow jurors to acquit on certain charges and acquit this defendant. And so that being the case if he were trying to impress Agent O'Keefe one would think that he would have voted to convict on all of those charges and that defendant and that we would have had a mistrial on those issues and on that defendant rather than unanimous acquittal on those charges and that defendant. I'm curious counsel. In this case, in some cases the judge knows while the trial is going on that there's some problem and like in this case if I'm remembering the right one, a juror sent out a note saying the foreman is bullying me. Exactly. That was juror number one. And then the judge decides whether to do something about it and if he does do something about it he or she tells him you're supposed to reach a decision based on your own judgment but you should listen to each other. Usual thing. In this case the judge doesn't hear about it until after the verdict has been delivered. It's all over. Let's suppose hypothetically that the juror's vote did not show that the juror made an independent judgment and let's say that the juror wrote a letter a month after trial saying I fell in love with the government's wrap-up witness, its summary witness and I really wasn't thinking about the evidence at all, just that I loved it and that's why I voted to convict. Would the letter be admissible to impeach the verdict? Is there a case on this? Well, I think that the defendant's first burden is to show that there was an external extraneous information or influence. Yes, I know there's a case. And actually there are a couple decisions that you didn't cite that say exactly that. Right. And I think that this is one of those situations that is not external. But let's could you return to my hypothetical? Yes, I was trying to address that, Your Honor. I think that if this judge had the situation where their one juror had held out on all of the charges that resulted here in acquittal but instead they had been a mistrial and there had been a mistrial as to Charlotte Wadsworth and it was only one juror holding out, we might be in a different situation. See, I guess you don't want to talk about my hypothetical and give me a case. Well, I don't have a case. Do you understand my hypothetical? I do understand your hypothetical. I think I do. I thought there was a Supreme Court decision, but maybe I'm confused about it and I can't quite remember. I thought there was a Supreme Court decision about some jurors who got high on dope and they got drunk during the jury deliberations and the Supreme Court said that's okay, you can't impeach a jury with that. That's extraneous. It's not an external extraneous influence or an external extraneous information. And the Supreme Court said If the bailiff had given them the dope and given them the bottle, that would be different. Right. Or if Agent O'Keefe had supplied this information, or the dope or the bottle, it might be different. This kind of thing may be an outgrowth of the fact that we don't allow jurors to discuss the case before the case is submitted to them, and as a result, they talk about the lawyers, the witnesses, or they think about them. It's interesting. That may be, Judge Hawkins. It may be. And I don't have an answer for, you know, how we would remedy. In Arizona, we let them talk about the case as long as they're all present and they don't come to a conclusion. And that stops this business of who has a short skirt  Okay. If there are no more questions, I would submit it. Thank you, Counsel. Thank you. We went over time on the direct, so there's eight minutes left, I think. Just divided four and four, unless Counsel advise otherwise. I just had a couple brief points here in rebuttal. Judge Kleinfeld, with respect to the point you raised about, well, didn't the defense put the judge, the district court judge, in a tough situation by not squarely raising this multiplicity issue below? I did point out in my briefing that at sentencing, the attorney for Mr. Bates did say the following, quote, the government's case against Mr. Bates was one set of acts done for a common purpose, and he should be sentenced accordingly rather than for multiple reasons. So, again, though he didn't utter the magical words double jeopardy or multiplicity, I think that fairly squarely presents the issue. And he was making that argument in the context of I don't want you to impose multiple consecutive sentences, Your Honor, for these conspiracy convictions. Now, counsel for the government raised this grouping issue. I don't think that that is even germane to the multiplicity issue because Mr. Bates and Mr. Smith were both convicted of 18 U.S.C. 371, which is a five-year statutory max. Mr. Bates and Mr. I know Mr. Bates got the full five-year max for his first consecutive five-year max for his second conspiracy conviction, and then 16 more months for the third conspiracy conviction. So it's a statutory issue. His penalty exceeded the statutory maximum under, and constitutional under, double jeopardy. Then with respect to the standard of review, I cited in my briefing this Court's decision in McKittrick which makes clear that this multiplicity type of issue with respect to sentencing is de novo review, and there's no ands, ifs or buts about it. This Court, back in the 70s, in a case which I cited in my briefing called I don't know how you pronounce it, Launius L-A-U-N-I-U-S said it's a non-sequitur to even argue that a defendant could waive a multiplicity argument. He's serving an illegal sentence if his contention is true, therefore he or she can raise the argument for the first time on appeal. And so with that, I'm prepared to submit it unless there's additional questions. Thank you, counsel. Thank you, Your Honors. I just have a few points I'd like to raise. The first on the multiplicity, his argument, I just Mr. Smith does not make the same argument because he was gotten concurrent sentences on the three conspiracy counts. So he doesn't make the multiplicity argument with respect to sentencing. I have joined his argument in his initial brief about the failure to give a multiple conspiracy jury instruction. With respect to back to the jury bias issue, two points I want to make. First of all, I don't think you could take much out of the jury's verdict that they found not guilty on some counts. There's no way to determine what kind of influence that juror had in the jury deliberations or whether they would have found not guilty on a greater number of counts if it wasn't for this juror's bias and his infatuation with the government's case agent. And second, I think that addressing Judge Graber's concerns, I think the case law does not require that there has to be something improper about the contact or something improper done by one of the government agents or witnesses. Even when there's an innocuous contact, there's still a right to be able to probe to determine the full extent of the prejudice to the defendant. Well, what's difficult is you come butting up against the cases that say that you can't find out what was in the jurors' minds when they deliberated, which is also a principle. And if all you have is that someone takes a shine to a witness or, conversely, detests a witness, it seems to me that that is almost the definition of the jury deliberation process, even if it's an irrational like or dislike. I think the cases talk about you cannot delve into the jury deliberation process, what was discussed, the numerical count, etc. But you can talk to the jurors about the effect that that contact had on their thinking and how they felt about that contact. That's somewhat like the Rutherford case with the IRS agents and the different type of contact, but we're in the visiting area and watching the trial and some of the jurors thought they were glaring and this court reversed because the evidentiary hearing wasn't sufficiently complete because the... You're talking about the case where the IRS agents are all sitting right there. Right. And they're glaring at the jurors and the jurors are thinking, gee, if I come to the wrong result, does that mean I get audited? Right. And the court reversed in saying that the evidentiary hearing wasn't sufficiently complete and they should be able to get into more of the effect that that had on the individual jurors and their thinking. Not whether that influenced their decision directly to say guilty or not guilty, but what happened in the jury deliberation room. And I acknowledge that that's somewhat of a fine line and maybe somewhat of a artificial line, but the cases do make that distinction. Thank you. Thank you, counsel. United States v. Smith and Gates is adjourned until 9 a.m. tomorrow. All rise.
judges: Kleinfeld, Hawkins, Graber